IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CODY FLACK, et al.,
*Individually and on behalf of all others similarly situated*,

                        Plaintiffs,

v.

WISCONSIN DEPARTMENT OF HEALTH
SERVICES and LINDA SEEMEYER,
In her official capacity,

                        Defendants.

OPINION AND ORDER

18-cv-309-wmc

On May 9, 2019, defendants filed a motion to stay proceedings "pending the outcome of the Department's promulgation of emergency and permanent rules to remove Wisconsin Administrative Code §§ 107.03(23)-(24) . . . and 107.10(4)(p)." (Dkt. #175 at 1.) Specifically, they seek to suspend briefing on plaintiffs' motion for summary judgment and to cancel the September 16, 2019, trial to allow "the political process a chance to resolve the real substance of this lawsuit." (*Id.* at 1-2, 5.) Plaintiffs oppose this motion as both belated and premature. (Dkt. #180 at 4-6.) As explained below, defendants' motion will be denied.

OPINION

As the parties recognize, the court considers four factors in analyzing whether to exercise discretion to grant a stay:

> (1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.

*Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (internal

citations omitted). Additionally, "when considering a request for a stay, courts should be mindful of the Supreme Court's admonition, stated repeatedly by the Court of Appeals for the Seventh Circuit, that federal courts have a 'virtually unflagging obligation' absent 'exceptional circumstances' to exercise jurisdiction when a case is properly before it." *Id.* (citations omitted). "A stay that is so extensive as to be 'immoderate' is an abuse of discretion." *Id.* (quoting *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)).

*First*, as the parties readily agree, this case is *not* at an early stage. (Dkt. #175 at 5; Dkt. #180 at 5-6.) The parties have been litigating for over a year, the dispositive motion deadline has passed, fact and expert discovery are well underway, and trial is just four months away. (*See* dkt. ##1, 114.) Accordingly, this factor weighs against a stay.

*Second*, because both the named plaintiffs and the certified class "have already obtained the preliminary injunctive relief they sought" as the court has preliminarily enjoined defendants from enforcing the Challenged Exclusion during the pendency of the lawsuit, defendants argue that plaintiffs will not be unduly prejudiced or tactically disadvantaged by a stay. (Dkt. #175 at 3.) Likewise, they argue that a stay permitting rulemaking to proceed could give plaintiffs additional relief not sought in this litigation -- removal of Wis. Admin. Code § DHS 107.10(4)(p), which excludes Medicaid coverage for "[d]rugs, including hormone therapy, associated with transsexual surgery or medically unnecessary alteration of sexual anatomy or characteristics." (*Id.* at 4-5 (quoting Wis. Admin. Code § DHS 107.10(4)(p)).)

The court is certainly sympathetic to the possibility of finding a non-judicial resolution of any dispute, particularly one involving challenges to the legality of state

action, as should be plaintiffs given the continued vagaries of the law in this area. As plaintiffs pointout, however, "DHS simply cannot predict whether it will be successful in removing the Challenged Exclusion -- or, even if it is successful, how long that process will take." (Dkt. #180 at 1.) Plaintiffs outline "the lengthy, multi-step process involved in promulgating a permanent rule," which typically takes 7.5 to 13 months to complete and provides the Wisconsin Legislature multiple opportunities to "suspend or block a new rule," making the process inherently uncertain.[1] (*Id.* at 4-5.) The court agrees with plaintiffs that the uncertainty of the rulemaking process -- to say nothing of its possible length -- weighs against a stay.

Moreover, as discussed below, this case will have to move forward eventually, unless a settlement is reached with the named plaintiffs.[2] Indeed, even if the Challenged Exclusion were changed, an argument could even be made that an injunction would still be appropriate at this late stage of the lawsuit.

*Third*, defendants contend that a stay would simplify the issues for trial. (Dkt. #175 at 3.) Specifically, they explain that plaintiffs' claims for equitable relief would be mooted if the Department is successful in "promulgat[ing] emergency and permanent rules to

---

[1] While defendants acknowledge that the legislature could suspend an emergency rule, they fail to note the legislature's involvement in promulgating a permanent rule and only represent that "while the emergency rule is in place, the Department intends to promulgate a permanent rule." (Dkt. #175 at 4.)

[2] Plaintiffs seek the following relief in their amended complaint: (1) class certification, with named plaintiffs as class representatives; (2) preliminary and permanent injunctions enjoining the Challenged Exclusion; (3) declaratory judgment that the Challenged Exclusion violates § 1557 of the Affordable Care Act, the Medicaid Act's availability and comparability requirements, and the Equal Protection Clause of the Fourteenth Amendment; (4) compensatory damages to the named plaintiffs under § 1557 of the Affordable Care Act; (5) attorneys' fees, costs and expenses, and (6) "such other and further relief as the Court may deem just and proper." (Dkt. #85 at 41-42.)

remove the Challenged Exclusion." (*Id.* at 4.) Likewise, defendants contend that a stay would reduce the burden of litigation for the parties and the court, so only the named plaintiffs' claim for monetary damages would remain and could possibly be resolved via mediation. (*Id.* at 3.)

Plaintiffs disagree, arguing that regardless of the outcome of the rulemaking process, the court will still need to determine the legality of the Challenged Exclusion. (Dkt. #180 at 1, 6 & n.1.) They further explain that the permanent removal of the Challenged Exclusion "would *not* moot Plaintiffs' damages claims under Section 1557 or their need for a declaratory judgment that would serve as the predicate for those damages." (*Id.* at 6.) Plaintiffs add that it is unclear whether the successful rescission of the Challenged Exclusion would provide all the relief requested, pointing out that a temporary rescission would not moot their challenge. (*Id.* at 7.)

For reasons already alluded to, the court is again inclined to agree with plaintiffs. Unless defendants are willing to concede liability, court resources are unlikely to be preserved through a stay. Accordingly, these factors also do not favor a stay.

ORDER

IT IS ORDERED that defendants' motion to stay proceedings (dkt. #175) is DENIED.

Entered this 17th day of May, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

4